OPINION
{¶ 1} Ronemus Heath Co. L.P.A. (Ronemus Heath), appeals from a judgment of the Clark County Municipal Court, which found that it had failed to establish negligence on the part of We're Jammin Inc., d.b.a BW-3.
 {¶ 2} The building in which Ronemus Heath operates its law practice shares a sewer line with an adjacent building owned by Mrs. Art Wilson. The line flows from Ronemus Heath's building through Wilson's building and then connects with a line that extends toward the street, such that a portion of the line in Wilson's building carries waste from both buildings. The pipes have been configured in this way for as long as any of the parties can remember, and they agreed that an easement existed with respect to the pipes that crossed from Ronemus Heath's building into Wilson's building.
 {¶ 3} In 2002, Wilson was leasing her building to BW-3 for the operation of a restaurant. Her husband was responsible for maintaining the building. That year, Ronemus Heath experienced a few minor drainage problems, and these problems were easily corrected. A "grease"-like substance that Ronemus Heath attributed to the restaurant apparently contributed to these backups. On September 20, 2002, a significant backup occurred in which sewage overflowed overnight from two toilets in Ronemus Heath's office, ruining much of the flooring and necessitating substantial cleanup.
 {¶ 4} In July 2003, Ronemus Heath filed a complaint against BW-3 alleging that it had negligently maintained the sewer line in its building "and negligently permitted excessive amounts of grease and other debris to enter the sewer line," resulting in the sewage backup into Ronemus Heath's office. Ronemus Heath claimed that its damages for flooring replacement, drain cleaning, and plumbing services totaled $7,005.96. BW-3 filed an answer and the matter proceeded to trial.
 {¶ 5} At trial, Ronemus Heath called its members, Thor Ronemus and James Heath, to testify about the damage to their office and their theory that BW-3 had been responsible for the backup. Ronemus testified to his conclusion that "whoever is responsible for the BW's building is responsible" for the sewer lines in that building. Similarly, Heath testified that "it would be BW-3 or somebody over there's responsibility to take care of those lines." Heath also opined that it would be the responsibility of whomever caused the blockage to clean the lines. Ronemus and Heath both testified that the backups commenced only after BW-3 began its restaurant operation. Several plumbers testified to the presence of a hardened, grease-like substance in the pipes, and Ronemus and Heath presented evidence that they did not use any grease in their business. The plumbers also testified on cross-examination that BW-3 had the appropriate grease traps in place to prevent or restrict the drainage of grease into the pipes.
 {¶ 6} Art Wilson also testified about the maintenance of the pipes in his wife's building. Over the years, the pipes had required periodic maintenance for blockages, which he had sometimes hired a plumber to perform and had sometimes performed himself. Mr. Wilson did not present any evidence that BW-3 had assumed this responsibility when it leased the premises.
 {¶ 7} At the close of Ronemus Heath's evidence, BW-3 moved for a directed verdict, asserting that Ronemus Heath had not shown that BW-3 had a duty to maintain the pipes, a breach of such a duty if one existed, or proximate causation. The trial court denied the motion for directed verdict but instructed the parties to file memoranda of law. After considering the memoranda, the trial court entered judgment in favor of BW-3 on the basis that Ronemus Heath had failed to establish that BW-3 had a duty to maintain the sewer line.
 {¶ 8} Ronemus Heath raises one assignment of error on appeal.
 {¶ 9} "THE COURT ERRED BY FINDING THAT DEFENDANT WE'RE JAMMIN INC. DID NOT OWE A DUTY TO PLAINTIFF TO MAINTAIN SEWER LINES AND BY NOT FINDING A DUTY OWED BY DEFENDANT TO PLAINTIFF TO NOT NEGLIGENTLY PERMIT BLOCKAGES IN THE SEWER LINES UNDER DEFENDANT'S CONTROL WHICH WOULD CAUSE DAMAGE TO PLAINTIFF."
 {¶ 10} Ronemus Heath claims that the trial court erred in failing to find a duty on the part of BW-3 to maintain the sewer line where BW-3 had control of the line and what was put into the line.
 {¶ 11} The trial court analyzed this issue as follows:
 {¶ 12} "In order to recover on a claim of negligence, the plaintiff must prove the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach of the duty proximately caused plaintiff's injury. Francis v. Showcase Cinema Eastgate (2003),155 Ohio App.3d 412 (citing Wellman v. E. Ohio Gas Co. (1953),160 Ohio St. 103.) Plaintiff has presented no evidence as to a duty owed it by defendant. Defendant is not the owner of the property, and there was no evidence in the form of a lease agreement evidencing an obligation to maintain the sewer lines. The evidence before the Court includes an understanding by R H and Wilson, that R H possesses an easement through the [Wilson building], although all agree none exists in writing. * * *
 {¶ 13} "The claim appears to be premised on a theory that because backups did not occur until defendant began operating its business, it must be responsible. After a review of the evidence presented, that is not an accurate assessment, given Wilson's testimony that he repeatedly dealt with blockages, and required the services of a professional drain cleaner less frequently after purchasing his own `snake.' While it is also clear that nothing of the magnitude of the September 2002 event had previously occurred, the evidence does not support a finding that defendant owed plaintiff a duty to maintain the sewer lines. If anything, plaintiff's evidence suggests a duty owed by Wilson's wife as owner of the property, or a shared duty by her and RH for maintenance of the line. * * *"
 {¶ 14} In our judgment, the trial court's determination that BW-3's landlord, and perhaps RH, had a duty to maintain the sewer line did not necessarily foreclose any duty on the part of BW-3 — Mrs. Wilson's tenant — to RH.
 {¶ 15} As it relates to RH and BW-3, the law is summarized at 70 Ohio Jurisprudence 3d (2004)74-75, Negligence, Section 18, as follows:
 {¶ 16} "It is a general principle of law that every person may make such use as he or she will of his or her own property, provided such person uses it in such a manner as not to injure the rights of others or the rights of neighbors. This principle often finds expression in the Latin maxim, `sic utere tuo ut alienum non laedas' — `so use your property as not to injure another.'
 {¶ 17} * * *
 {¶ 18} "The maxim, `sic utere tuo ut alienum non laedas,' however, is not a hard and fast rule applied, under all circumstances, to the use of one's own property. The maxim is undoubtedly to be so limited in its application as not to restrain the owner of property from a prudent and reasonable exercise of his right of dominion. A party is not answerable in damages for the reasonable exercise of a right. A liability arises only when it is shown that the right was exercised negligently,
unskillfully, or maliciously." (Emphasis ours).
 {¶ 19} This summary is largely based on O'Day v. Shouvlin (1922),104 Ohio St. 519, 525-526, 529. See, also, 2 Ohio Jurisprudence 3d (1998) 10, Adjoining Landowners, Sections 2, 3, 5.
 {¶ 20} Here, RH alleged that BW-3 negligently permitted excessive amounts of grease and other debris to enter the sewer line, causing the backup that damaged RH's offices. The evidence established that there was a hardened, grease-like substance obstructing the sewer line, that BW-3 used grease in its business operations, that RH did not, and that RH only experienced sewer backups after BW-3 commenced restaurant operations.
 {¶ 21} The assignment of error is sustained. Having determined that BW-3 owed a duty to RH, we will reverse the judgment in favor of BW-3 and remand this matter for a determination of whether BW-3 was negligent in its disposal of grease and other debris. If BW-3 is found to have been negligent, the court shall proceed to determine whether its negligence was the proximate cause of the injury to RH and, if so, the amount of damages.
Fain, J. and Grady, J., concur.