[Cite as *Pickard v. Univ. of Toledo*, 2022-Ohio-2385.]

| | |
|---|---|
| KIMBERLY PICKARD, et al. | Case No. 2019-00738JD |
| Plaintiffs | Judge Patrick E. Sheeran |
| v. | <u>JUDGMENT ENTRY</u> |
| UNIVERSITY OF TOLEDO | |
| Defendant | |

{¶1} On December 20, 2021, Plaintiff filed objections to the Magistrate's December 3, 2021 decision recommending judgment in favor of Defendant, University of Toledo (UT). Defendant did not file a response. For the reasons set forth below, the Court declines to adopt the Magistrate's recommendation and instead enters judgment in favor of Plaintiff.

**Standard of Review**

{¶2} Civ.R. 53(D)(3)(b)(i) provides, "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i)." "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b). The Court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues, and appropriately applied the law." Civ.R. 53(D)(4)(d). In reviewing the objections, the Court does not act as an appellate court but rather conducts "a de novo review of the facts and conclusions in the magistrate's decision." (Citations omitted.) *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 17. Objections "shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). An objection to a factual finding must be supported "by a transcript of all the evidence submitted to the magistrate

relevant to that finding or an affidavit of that evidence if the transcript is not available." Civ.R. 53(D)(3)(b)(iii).

**Factual Background**

{¶3} Plaintiff, Kimberly Pickard, was visiting her nephew, a patient at Defendant's hospital.  After parking her vehicle, Plaintiff walked through a surface lot towards the hospital's entrance.  While walking between several parked cars, Plaintiff's right foot hit a depression in the asphalt leading to a drainage grate.  This depression was two to three inches deep and two to three feet wide.  Plaintiff fell and broke a bone in her foot.  As a result, Plaintiff filed claims of negligence and loss of consortium against Defendant.  The issues of liability and damages were bifurcated, and a trial on the issue of liability was held before a Magistrate.  Following the trial, the Magistrate recommended judgment in favor of Defendant.

**Plaintiff's Objections**

{¶4} Plaintiff argues that the Magistrate erred in determining that the depression in the surface lot was discoverable upon reasonable inspection.  Plaintiff further asserts the Magistrate erred when she concluded the depression in the parking lot was not an unreasonably hazardous condition.

**Conclusions of Law**

{¶5} In order for Plaintiff to prevail upon her claim of negligence, she must prove by a preponderance of the evidence that Defendant owed her a duty, that Defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused her injuries.  *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶6} Under Ohio law, the duty owed by an owner or occupier of premises generally depends on whether the injured person is an invitee, licensee, or trespasser.  *Gladon v.*

*Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137. Plaintiff was on Defendant's premises for purposes that would classify her as an invitee, defined as a person who comes "upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Baldauf v. Kent State Univ.*, 49 Ohio App.3d 46, 47 (10th Dist.1988). An owner or occupier of premises owes its invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong, supra*, at 80. "[T]o establish that the owner or occupier failed to exercise ordinary care, the invitee must establish that: (1) the owner of the premises or his agent was responsible for the hazard of which the invitee has complained; (2) at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its existence or to remove it promptly; or (3) the hazard existed for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care." *Price v. United Dairy Farmers, Inc.*, 10th Dist. Franklin No. 04AP-83, 2004-Ohio-3392, ¶ 6.

{¶7} Under the open and obvious doctrine, a property owner "'owes no duty to warn invitees * * * of open and obvious dangers on the property. * * * The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' (Citations omitted.)" *Duncan v. Capitol S. Cmty. Urban Redevelopment Corp.*, 10th Dist. Franklin No. 02AP-653, 2003-Ohio-1273, ¶ 27, quoting *Anderson v. Ruoff*, 100 Ohio App.3d 601, 604 (1995).

{¶8} "Open-and-obvious hazards are those hazards that are neither hidden nor concealed from view and are discoverable by ordinary inspection. '[T]he dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an "open and obvious" condition under the law. Rather, the determinative issue is

whether the condition is observable.' Put another way, the crucial inquiry is whether an invitee exercising ordinary care under the circumstances would have seen and been able to guard [herself] against the condition. Thus, [the Tenth District Court of Appeals] has found no duty in cases where the plaintiff could have seen the condition if he or she had looked even where the plaintiff did not actually notice the condition before falling." *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 10-11. (Internal citations omitted.)

**Discussion**

{¶9} While the Court finds no error in the Magistrate's summary of the evidence from the trial, the Court finds that the Magistrate erred when she concluded that Plaintiff's negligence claim was barred by the Open and Obvious doctrine. Upon independent review, the Court finds the depression that caused Plaintiff's injury was hidden from view and not discoverable by ordinary inspection. A vehicle was parked in the space above the drainage grate, blocking most of the depression from Plaintiff's view. An examination of the photographs admitted into evidence, specifically the two photographs that comprise Plaintiff's Exhibit 3, do not show the existence of a significant depression to a pedestrian walking the same route that Plaintiff took. Plaintiff testified that what she saw as she approached the depression is depicted on the bottom photograph of Plaintiff's Exhibit 3 (Transcript, Vol. 1, at p. 163). After she fell, what she saw, from ground level, is depicted in the top photograph of Plaintiff's Exhibit 3. (Id.) An examination of the top photograph, the one that Plaintiff saw while lying on the ground after her fall, shows much more clearly the defect in question. And since the evidence shows that there was a car parked closer to the white line, which obscured much of the depression and which is not present in Exhibit 3, that depression would have been even harder to spot.

{¶10} To be sure, there is evidence of cracked pavement in the photographs, but nothing that would alert an approaching person to the extent of the depression that is there. Thus, the situation that Plaintiff faced that morning was worse than the one

depicted by the photographs.  That Plaintiff admitted that she observed the depression *after falling* does not render it discoverable by ordinary inspection.  She testified that she only realized the significance of the depression *after* falling and viewing it while lying on the ground.  That angle of observation is of course not available for a person walking upright.  In essence, Plaintiff could not have seen under the car to view the depression under ordinary (upright) conditions.

{¶11} In addition, the testimony of other witnesses makes it clear that the deteriorated condition was not observable under ordinary conditions.  Witness Douglas Collins (Collins) testified that he had trained another witness, Brian Foley (Foley), to identify problems in the parking lots (here, Lot 40) by visual inspection and to make note of them during his daily rounds.  It is telling that Foley never reported this condition to Collins (or anyone else).  Moreover, Collins himself noted that he did not see any dangerous condition in Lot 40.  If these two employees of Defendant, who are trained to look for such problems, did not see this, it begs credulity to insist that Plaintiff should have seen it.  The clear conclusion is that the depression was not discoverable by a pedestrian's ordinary inspection.  The condition was, in this set of circumstances, neither open nor obvious.

{¶12} The Court also finds that the conditions that caused Plaintiff's injury constituted an unreasonably dangerous condition.  A pedestrian is likely to trip, fall, and injure herself upon stepping without warning into a depression two to three inches deep.  This is even more likely when the pedestrian is over 60 years of age.  Moreover, Defendant's own expert, Eric Pempus, testified that the cracks visible in the photographs that Plaintiff took would take at least months to develop, and he agreed that someone who would inspect Lot 40 would have been able to see the cracks depicted in Exhibit 3.  Consequently, by failing to remedy or warn Plaintiff of such a depression, Defendant breached the duty of care it owed to Plaintiff.  This breach of duty caused Plaintiff to fall

and break her foot. Consequently, Plaintiff has established Defendant is liable for negligence.

**Conclusion**

{¶13} Upon an independent, de novo review of the record, the Magistrate's decision, and the objections filed, the Court finds the Magistrate improperly determined both that the sewer grate area was not an unreasonably dangerous condition, and that Plaintiff could reasonably have been expected to discover it. Therefore, the Court declines to adopt the Magistrate's recommendation. Judgment is rendered in favor of Plaintiff on the issue of liability. The clerk shall schedule a hearing for assessment of damages.

 

PATRICK E. SHEERAN
Judge

**Filed May 4, 2022**
**Sent to S.C. Reporter 7/11/22**